IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| STEPHANIE LOOTEN, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 2:15-cv-04121-NKL |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiffs Stephanie and Jon Looten, the surviving parents of Jasmine Looten, filed this wrongful death lawsuit pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346, *et seq.,* arising out of Jasmine Looten's stillbirth death. Before the Court is Defendant United States of America's Motion to Dismiss [Doc. 9]. For the following reasons, the motion is denied.

**I.   Background[1]**

Due to a "double nuchal cord"—a condition where an infant's umbilical cord wraps twice around its neck—Jasmine Looten was delivered stillborn on January 14, 2011. At the time, Dr. Lorraine Dodson, M.D. told Plaintiff Stephanie Looten that "these things happen," and in doing

---

[1] These facts appear in the Lootens' Complaint [Doc. 1]. For purposes of deciding the United States' motion to dismiss, the Court accepts the Lootens' factual allegations as true and construes them in the light most favorable to them. *See Stodghill v. Wellston Sch. Dist.,* 512F.3d 472, 476 (8th Cir. 2008).

so she implied "that [Jasmine's death] was an unfortunate turn of luck that could not have been prevented." [Doc. 1, p. 3, ¶ 7].

In the months preceding Jasmine's stillbirth, Stephanie Looten received pre-natal consultation and treatment from Dr. Dodson and Dr. Brandi Nichols, M.D., both employees of the Community Health Center of Central Missouri, a federally-supported medical facility. On January 12, 2011, Dr. Dodson and Dr. Nichols elected to await Jasmine's natural delivery rather than inducing delivery or monitoring Stephanie in the hospital. When Dr. Dodson and Dr. Nichols made this decision they "knew or should have known that [Stephanie Looten] had reduced aminiotic fluid and that Jasmine was very growth-restricted." [Doc. 1, p. 5, ¶ 23]. They therefore should have monitored the pregnancy or induced delivery, either of which would have prevented the double nuchal cord.

In light of their inaction, the Lootens allege that Dr. Dodson and Dr. Nichols were negligent and that their employer, the United States, is liable for Jasmine's wrongful death.[2] Because nuchcal cord is a common cause of stillborn deliveries, the Lootens claim they did not and could not suspect a connection between the doctors and the death. Therefore they did not have an obligation at the time of Jasmine's death to further investigate the cause of the nuchcal cord. [Doc. 1, p. 6, ¶ 29].

Instead, in the months following Jasmine's stillbirth, Stephanie Looten continued to see Dr. Dodson as she attempted to conceive another child. Dr. Dodson prescribed a course of treatment with clomiphene citrate, a medication used to increase fertilization. On November 4, 2011, a pharmacist accidentally filled Stephanie Looten's prescription for 50 milligrams of

---

[2] The Parties agree that federally-supported heath centers and their employees are considered employees of the Public Health Service, an agency of the United States. *See* 42 U.S.C. § 233(a)-(n).

clomipramine instead of 50 milligrams of clomiphene citrate. Stephanie Looten took the medication and suffered an adverse medical reaction, leading her to consult counsel about the matter in April 2012. Around that time, the Lootens "advised [counsel] of Jasmine's death and questioned whether there may have been negligence leading to the death, considering the negligence associated with the medication mix-up." [Doc. 1, p. 8, ¶ 35].

In September 2012, the Lootens authorized their counsel to obtain medical records regarding Jasmine's care and delivery. Counsel received the records by October 2012 and sent them to medical professionals for review. In November 2013, one such professional offered a written opinion that Dr. Dodson and Dr. Nichols had provided Jasmine negligent care. The Lootens filed suit in Missouri State court the following month, on December 30, 2013.

On April 24, 2014, the United States removed the case to federal court and moved to dismiss, arguing that the Lootens had not first filed an administrative claim as required under the FTCA. The Lootens voluntarily dismissed the case on May 6, 2014. They then submitted an FTCA claim to the United States Department of Health and Human Services on July 15, 2014. When the DHHS did not make a decision within six months, the Lootens elected to deem their claim denied and filed this present lawsuit on June 3, 2015.

**II. Discussion**

The Federal Tort Claims Act, 28 U.S.C. § 1346(b) and §§ 2671-2680, provides a limited waiver of sovereign immunity for tort claims against the United States based on the acts or omissions of government employees acting within the scope of their employment. Such claims include those for personal injury resulting from medical care. 42 U.S.C. § 233(a). In these

3

cases, FTCA coverage is exclusive of any other civil action against a United States employee. *Id.*

An FTCA claim must be "presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). If a plaintiff does not file within this period, his claim is "forever barred." 42 U.S.C. § 233(a). *See also Lehman v. Nakshian*, 453 U.S. 156, 161 (1981) (noting that the FTCA permits a limited waiver of sovereign immunity, and as such the "conditions upon which the government consents to be sued must be strictly observed").

The United States argues that the Lootens' claim is forever barred under the FTCA's statute of limitations. It maintains that the claim accrued at the time of injury—Jasmine's death—and thus the statutory limitations period expired two years later, on January 14, 2013, well before the Lootens submitted an administrative claim to the DHHS.[3]

In response, the Lootens maintain that their claim did not accrue on the date of Jasmine's death because, at that time, they "could not have, and did not suspect that [Dr. Dodson and Dr. Nichols'] omissions caused Jasmine's death such that they should have begun asking questions of other doctors." [Doc. 15, p. 4]. The Lootens instead argue that the statute of limitations began running in September 2012, when they first received Jasmine's medical records, and consequently the limitations period did not expire until September 2014.

The dispositive question before the Court is a narrow one: did the Lootens' claim accrue on January 14, 2011, at the time of Jasmine's death, and if not, does the record show at what point the FTCA statute of limitations began to run?

### A. Jasmine's Death; January 2011

---

[3] The Court is not discussing the *Westfall* savings provision because it was not raised by the Plaintiffs and does not appear to apply on these facts.

4

Case 2:15-cv-04121-NKL   Document 20   Filed 11/04/15   Page 4 of 11

The United States argues that the claim accrued at Jasmine's death because the Lootens plainly knew Jasmine had suffered an injury, so they had an immediate duty to investigate the cause. The Lootens respond that they were expressly told Jasmine died of natural causes by their own doctors and therefore had no obligation to investigate their doctors' involvement in the death.

Generally, an FTCA claim accrues at the time of injury. *Osborn v. United States,* 918 F.2d 724, 731 (8th Cir. 1990). However, in medical malpractice cases, a plaintiff in "blameless ignorance" of her injury is not held to this general accrual standard. *United States v. Kubrick,* 444 U.S. 111, 120 (1979). Instead, the statute of limitations begins when "the plaintiff actually knew, or in the exercise of reasonable diligence should have known, the cause and existence of his injury." *Wehrman v. United States,* 830 F.2d 1480, 1483 (8th Cir. 1987). A plaintiff should know the existence of an injury when she is "armed with the facts about the harm done to her," and at this point the plaintiff has a duty to investigate what caused the harm. *T.L. ex rel. Ingram v. United States*, 443 F.3d 956, 961 (8th Cir. 2006). If the plaintiff neglects this duty despite possessing information necessary to determine the injury's cause, the statute of limitations begins to run. *K.E.S. v. United States,* 38 F.3d 1027, 1029 (8th Cir. 1994) ("[I]f plaintiff fails to act despite knowledge of the harm and its cause, defendant is entitled to the limitations defense."). When the plaintiff possesses necessary information is a context-specific question of law. *Slaaten v. United States*, 990 F.2d 1038, 1041 (8th Cir. 1993) ("When the plaintiff knew or should have known is a question of federal law, which the court must determine in light of the surrounding circumstances.").

The Lootens do not dispute that they knew about Jasmine's death in January 2011. The question is when, in light of Dr. Dodson's comment, they should have known that the

5

Defendants caused or contributed to cause Jasmine's death. *See Motley v. United States*, 295 F.3d 820, 822 (8th Cir. 2002) ("In this case, plaintiffs obviously knew the fact of an injury—the baby's death—no later than February 7, 1996, the date of the stillborn delivery. The issue is when they knew or reasonably should have known that [the medical staff's] prenatal care caused that injury.")

In *Brazzell v. United States*, 788 F.2d 1352 (8th Cir. 1986), the Eighth Circuit stated that the plaintiff "ought to be charged with knowledge [of her injury's cause] as soon as she could have discovered [this] cause by asking a doctor." *Brazzell*, 788 F.2d at 1356. The Lootens presumably could have complied with this standard by asking doctors about Jasmine's death in as early as January 2011. Yet they did not do so because their doctor, who they trusted, had already explained the cause herself. In this sense *Brazzell* is analogous. There, the district court found that the plaintiff, who suffered from myalgia, was not under a duty to investigate whether a vaccination had caused her condition. The Eighth Circuit affirmed. It noted that the plaintiff "was advised by her doctor in January 1977 that the vaccination could not be the cause of her continued suffering. In the face of this advice, it would be unfair to charge [plaintiff] with reason to know differently." *Id*.

Here it is likewise unfair to charge the Lootens with the duty to investigate further and seek a different explanation for their daughter's death when Dr. Dodson had directly explained the death as the result of a known, natural cause. The Lootens, therefore, reasonably should not have known the cause of injury in January 2011, and accordingly their claim did not accrue at that time.

The United States, citing *Motley*, argues that this conclusion runs counter to Eighth Circuit precedent. *Motley* also involved a medical malpractice claim arising out of a stillborn

delivery. In that case, the plaintiffs' daughter died at birth due to intrauterine fetal demise. The plaintiffs argued that their cause of action did not accrue at the time of death because, even though they were then aware of the immediate cause—intrauterine fetal demise—they were not aware that this condition, in turn, was caused by negligent prenatal medical care. The Eighth Circuit disagreed and affirmed the district court's holding that the statute of limitations ran from the baby's death. At the time of delivery, it noted, the plaintiffs quickly suspected subpar prenatal treatment and the attending medical personnel did not offer an explanation for why the intrauterine demise occurred. The Eighth Circuit thus remarked that "[t]his is not a case where [the hospital] staff attributed the baby's death to natural causes, as in *Thompson v. United States,* 642 F.Supp. 762, 763 (N.D. Ill. 1986)." *Motley*, 295 F.3d at 823.

Because Jasmine's death was attributed to natural causes, it follows that the Lootens' claim is distinguishable from *Motley* and analogous to *Thompson*. In *Thompson*, the plaintiff brought an FTCA claim for medical malpractice after his wife died in a military hospital. The plaintiff maintained that the claim did not accrue at his wife's death because, at that time, doctors and nurses told him she had died solely of lupus, a natural cause. The District Court for the Northern District of Illinois agreed. It concluded that where a death is plausibly explained by a natural cause such as lupus, "there is initially no reasonable basis for supposing the doctors did not provide adequate and proper medical care." *Thompson*, 642 F.Supp. at 768. Finding such basis would only "encourage or reward simple paranoia." *Id*.

The Court finds this reasoning persuasive. Requiring patients to seek alternative causes of their injuries when they believe they already know the actual cause does not meaningfully serve Section 2401(b)'s purpose of protecting the United States from stale claims. *See United*

7

*States v. LePatourel*, 593 F.2d 827, 832 (8th Cir. 1979). This outcome would merely encourage distrust of one's own physician.

The United States also relies on *T.L ex rel. Ingram v. United States*, 443 F.3d 956 (8th Cir. 2006), and *Flores v. United States*, 689 F.3d 894 (8th Cir. 2012). Yet in each of these cases, the plaintiff had strong reason to suspect a suspicious cause behind the manifested injury, and was in fact actively investigating that cause at or around the time the injury occurred. *See T.L. ex rel. Ingram*, 443 F.3d at 961 (plaintiff's claim accrued the day after her daughter was born because, even though she did not yet know the daughter would develop cerebral palsy, she was contemplating legal action, knew the daughter had suffered brain damage, and hired an attorney days later); *Flores*, 689 F.3d at 902 (plaintiffs, the husband and uncle of a woman who died while in custody, retained counsel and sought medical records even before the woman's death; their claim accrued on the date of death). The facts alleged by the Lootens present a very different fact pattern. There is no evidence that they had even a suspicion or hunch of wrongdoing until April 2012. Therefore their claim did not accrue in January 2011 at Jasmine's stillbirth.

**B. The Lootens' Suspicions; April 2012**

The Lootens state in their Complaint that "in or about April, 2012, [they] consulted [their attorneys] regarding the medication mix-up, and later advised [them] of Jasmine's death and questioned whether there may have been negligence leading to the death, considering the negligence associated with the medication mix-up." [Doc. 1, pp. 7-8, ¶ 35]. Pointing to this language, the United States argues that their claim necessarily accrued by the time these suspicions arose. It asserts that "the Lootens admit that they suspected as early as November of 2011 that Drs. Dodson's and Nichols' prenatal care may have caused the death," and therefore

the Lootens were on notice to investigate the cause of Jasmine's death at that time. [Doc. 19, p. 4].

In determining whether a plaintiff "should have known" he has an FTCA claim, a court will apply an objective standard: it will ask whether a reasonable plaintiff would have known about the injury and its cause. *Garza v. U.S. Bureau of Prisons*, 284 F.3d 930, 935 (8th Cir. 2002) (noting that "[t]he assessment of whether a plaintiff has acted reasonably is an objective one"). In other words, if the causal connection is not actually known by a plaintiff, the statute of limitations begins to run when a ". . . reasonably diligent person . . . reacting to any suspicious circumstances . . . would have discovered" that the defendants caused the injury. *Id.* at 935. *Garza* further clarified that "[w]hen catalytic circumstances prescribe, a plaintiff must exercise reasonable diligence in inquiring into the injuries cause." *Id. See also Motley*, 295 F.3d at 823 (finding the claim accrued when plaintiffs strongly suspected substandard care, which an independent doctor could have confirmed).

Considering the facts as alleged in their Complaint, the Lootens had "question[s]" around April 2012, when they asked counsel whether Jasmine might have received negligent prenatal care. [Doc. 1, p. 8, ¶ 35]. The Lootens do not allege that they knew the cause of Jasmine's injury at that time. Nor are there any facts stating why the Lootens had questions about Jasmine's death at that time. There is no evidence that the Lootens had received additional information about Jasmine's death since January 14, 2011. The mistake that led them to consult an attorney involved a medication prescribed by Dr. Dotson, but that episode does not appear to suggest any negligence on Dr. Dotson's part and there is no apparent connection between the prescription episode and the facts or circumstances that preceded Jasmine's death.

9

Further, even if the Lootens' inquiry to their attorney in April 2012 is evidence of a suspicion that can be characterized as a "catalytic circumstance," the Lootens were only obligated to conduct a reasonable investigation. At this stage the record lacks sufficient evidence to determine if their investigation was reasonable.

Likewise, at this stage the Court cannot agree with the Lootens' argument that the statute of limitations started running in September 2012, the month the Lootens requested and began receiving Jasmine's medical records. There is no explanation why there was a delay in requesting the medical records or why it took that amount of time to get the medical records. If their investigation was not reasonable, the statute of limitations could be triggered at an earlier date. Nor is there evidence that the medical records contain evidence that that a reasonable person would require in order to see the causal connection between the death of Jasmine and Drs. Dodson and Nichols' treatment. The law is clear that the statute of limitations is not delayed merely because a plaintiff does not know a federal official was negligent. Rather the inquiry is about whether the federal official caused the injury. *See United States v. Kubrick,* 444 U.S. 111, 120 (1979). Given the current status of the record, there is too little evidence to answer these questions.

It would appear that the Defendant has the burden to establish its affirmative defense. Because there is not enough evidence in the record to resolve that affirmative defense, the Court must presently deny the United States' Motion to Dismiss.

### III. Conclusion

For the foregoing reasons, the United States of America's Motion to Dismiss [Doc. 9] is DENIED without prejudice.

s/ Nanette K. Laughrey
												NANETTE K. LAUGHREY
												United States District Judge

Dated: November 4, 2015
Jefferson City, Missouri